**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DR. TERRY RAMNANAN,<br><br>    Plaintiff,<br><br>v.<br><br>COLLIN KEIFFER, ESQ., *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-12747 (BRM) (LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

   Before this Court are four Motions to Dismiss. The first is Defendants Ronald Hayek, D.C.

("Hayek") and Union Wellness Center, P.A., LLC's ("Union Wellness Center") (together, the

"Hayek Defendants") Motion to Dismiss Plaintiff Dr. Terry Ramnanan's ("Plaintiff") Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) Plaintiff opposed

(ECF No. 32),[1] and the Hayek Defendants replied (ECF No. 39). The second is Defendants Adam

Awari, D.C. ("Awari") and Advanced Chiro Spine Center, P.C.'s (together, the "Awari

Defendants") Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 19.) Plaintiff opposed (ECF

No. 35), and the Awari Defendants replied (ECF No. 38).[2] The third is Defendants Collin Keiffer,

Esq. ("Keiffer"), Detective Wendy Berg ("Berg"), Detective Grace Proetta ("Proetta"), and

Detective John Campanella's ("Campanella") (collectively, the "State Defendants") Motion to

---

[1] ECF No. 34 appears to be a duplicative entry of Plaintiff's Opposition to the Hayek Defendants' Moving Brief.

[2] ECF No. 42 appears to be a duplicative entry of the Awari Defendants' Reply to Plaintiff's Opposition Brief.

Dismiss pursuant to Rule 12(b)(6). (ECF No. 28.) Plaintiff opposed (ECF No. 48), and the State Defendants replied (ECF No. 52). The fourth is Defendants Gurbir S. Grewal ("AG Grewal") and the New Jersey Office of the Attorney General's (the "AG's Office") (together, the "NJ AG Defendants") Motion to Dismiss pursuant to Rules 12(b)(1) and (6). (ECF No. 30.) Plaintiff opposed (ECF No. 44), and the NJ AG Defendants replied (ECF No. 53).

Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Hayek Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED**, the Awari Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED**, the State Defendants' Motion to Dismiss (ECF No. 28) is **GRANTED**, and the NJ AG Defendants' Motion to Dismiss (ECF No. 30) is **GRANTED**.

## I.  BACKGROUND[3]

### A.  Factual Background

#### 1.  Plaintiff's First Indictment

Plaintiff is a New Jersey physician with over thirty-eight years of practice in pain management. (ECF No. 5 ¶¶ 1, 19, 21.) Hayek was a chiropractor and owner of Union Wellness Center in Totowa, New Jersey. (*Id.* ¶ 14.) At times relevant to this action, the State Defendants worked in different capacities for the AG's Office. (*Id.* ¶ 12.) Keiffer worked in the AG's Office's Office of the Insurance Fraud Prosecutor ("OIFP") as a Deputy Attorney General. (*Id.* ¶ 8.) Berg and Campanella worked as detectives in the OIFP (*id.* ¶¶ 9, 11), while Proetta was a detective within the Union County Prosecutor's Office (*id.* ¶ 10) and seemingly worked in connection with the AG's Office and OIFP (*see generally id.*).

---

[3] For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

In July 2016, Hayek pleaded guilty to state charges of second- and third-degree conspiracy, second-degree money laundering, commercial bribery, and failure to pay taxes (*id.* ¶¶ 36–37), and agreed to cooperate with the State Defendants in an investigation into an alleged "kickback scheme" involving physicians' illegal payments for patients (*id.* ¶ 26). "In exchange for this cooperation, the State Defendants permitted Hayek to enter into a plea agreement which provided for the possibility of a probationary sentence with *no* jail sentence imposed, instead of facing a potential prison sentence of more than *20 years*." (*Id.* ¶ 38.) "Furthermore, the State Defendants agreed to write a letter to the Chiropractic Licensing Board advising the Board of the cooperation given by Hayek to the State as a possible means of keeping his chiropractic license to practice medicine." (*Id.* ¶ 39.)

As part of his cooperation, Hayek participated in a proffer session with the OIFP on March 17, 2016. (*Id.* ¶ 42.) During this session, Hayek did not mention Plaintiff's name nor indicate he was involved in a kickback scheme. (*Id.* ¶¶ 43–44.) On April 1, 2016, during a second proffer session with members of the OIFP, "Hayek admitted to participating in multiple conspiracies, [and] identif[ied] many other medical providers and other professionals." (*Id.* ¶¶ 45–46.) However, "[i]t was only at the end of this long proffer session, after being relentlessly pressured to name additional doctors by the State Defendants, that Hayek finally made allegations against [Plaintiff]." (*Id.* ¶ 47.) Hayek asserted he referred approximately thirty patients to Plaintiff for EMG and NCV electrodiagnostic studies and tests in exchange for referral fees. (*Id.* ¶ 48.) Plaintiff, however, maintains Hayek's assertions are false and he never paid him for the referral of patients. (*Id.* ¶ 49.) Rather, "the only payments that [Plaintiff] ever made to Hayek were for rent." (*Id.* ¶ 50; *see also id.* ¶¶ 60–69.) According to Plaintiff, the State Defendants were aware Plaintiff's only payments to Hayek were for office space rental. (*Id.* ¶ 51.) Despite this knowledge, the State Defendants "willfully, deliberately[,] and knowingly attempted to conceal this material fact . . .

during the course of their investigation, [and] hid[] it from both the [state court] Judge and from the Grand Jury throughout the criminal proceedings." (*Id.* ¶ 52; *see also id.* ¶¶ 71–72.)

"Based entirely on the manufactured claims of Hayek," on August 1, 2017, Plaintiff was charged in a three-count indictment with (1) conspiracy in the third degree, N.J. Stat. Ann. § 2C:5-2; (2) commercial bribery in the third degree, N.J. Stat. Ann. § 21-9; and (3) criminal running in the third degree, N.J. Stat. Ann. § 2C:21-4.3a. (*Id.* ¶ 73.) In the indictment, "the State Defendants accused [Plaintiff] of conspiring with Hayek . . . to engage in [a] medical fraud kickback scheme wherein . . . [Plaintiff] paid Hayek $100.00 cash for conducting an EMG/NCV test in either the upper or lower extremity, or $200.00 in cash if both extremities were performed on patients referred by Hayek." (*Id.* ¶ 74.)

Plaintiff contends "[t]here was *no evidence* whatsoever to support" the charges levied against him (*id.* ¶ 75; *see generally id.* ¶¶ 76–88), and, instead, "the State Defendants decided to fill in the gaps of their (non-existent) case by literally making up evidence in order to establish probable cause" (*Id.* ¶ 89). Specifically, Plaintiff alleges "the State Defendants manufactured evidence in multiple and significant ways." (*Id.* ¶ 90.) First, the State Defendants materially altered the transcript of a recorded conversation between Plaintiff and Hayek to make it appear Plaintiff acknowledged paying Hayek for referrals when, in fact, the actual recording makes clear he is talking about their rental agreement and associated payments. (*See generally id.* ¶¶ 91–110.) "Thus, the transcript that was created by the State Defendants during their investigation, and ultimately presented to the Grand [J]ury, was materially different than the actual audio recording between Hayek and [Plaintiff]." (*Id.* ¶ 111; *see also id.* ¶ 114 ("Not only was the audio recording 'transcribed incorrectly,' but also, the transcript itself was fraught with significant gaps and

material omissions.").)[4] Second, the State Defendants created a "Shared Claims chart" during grand jury proceedings to show "instances where [Plaintiff] and Hayek collectively billed multiple insurance companies for medical procedures." (*Id.* ¶¶ 134–35.) Plaintiff, however, maintains there were no such shared claims. (*Id.* ¶ 138.) Furthermore, the Shared Claims chart (1) "took everything that [Plaintiff] billed and unlawfully combined and comingled such billings with every sum that Hayek's practice billed" (*id.* ¶ 139), and (2) "contain[ed] multiple entries from providers that [Plaintiff] had never heard of, and with whom he had no business dealings whatsoever" (*id.* ¶ 141).

Third, the State Defendants created a "Summary Chart" during their investigation for use in grand jury proceedings. (*Id.* ¶¶ 159–60.) The Summary Chart, however, (1) "included the names of patients who were allegedly referred by Hayek, when in fact, these patients were referred by *other* medical providers" (*id.* ¶ 164); (2) "repeatedly and consistently included erroneous information regarding the procedures performed on [Plaintiff's] various patients" (*id.* ¶ 169); and (3) included patients never seen or treated by Plaintiff (*id.* ¶¶ 173–74). Finally, to satisfy the $75,000 monetary threshold for Count Two of the indictment (*id.* ¶ 176), the State Defendants "created a false and misleading 'Insurance Billing' chart" (*id.* ¶ 181), "which improperly aggregated *all* of the insurance payments made to *all* of the alleged referral fee patients, for purposes of establishing a completely fictitious sum of $682,000.00 in 'fraudulent billing'" (*id.* ¶ 90; *see also id.* ¶¶ 184–85 (further alleging Plaintiff "did *not* submit $682,000.00 in bills . . . in

---

[4] Plaintiff also alleges the State Defendants concealed the truth about the altered transcript by, *inter alia*, refusing to disclose the identity of the transcriber, lying that the transcript was created by a transcription company, and preventing Proetta, the actual transcriber, from testifying at the second grand jury proceeding. (*Id.* ¶¶ 120–132.)

connection with Hayek's patients, and did *not* receive $230,000.00 in fees . . . for work performed on Hayek's patients," and did not fraudulently overbill)).[5]

### 2. Plaintiff's Superseding Indictment

Because their case against Plaintiff relied on the testimony of one man, Hayek, and, according to Plaintiff, was without any independent corroborating evidence (*id.* ¶ 214), the State Defendants explored the possibility of Plaintiff cooperating in their investigation by identifying other physicians involved in kickback schemes (*id.* ¶ 215). Plaintiff, however, refused to cooperate (*id.* ¶ 216), and the State Defendants subsequently filed a superseding indictment against him (*id.* ¶ 218). The superseding, second indictment, returned on May 31, 2018, charged Plaintiff with additional crimes, including: (1) conspiracy in the second degree, N.J. Stat. Ann. § 2C:5-2; (2) misconduct by a corporate official in the second degree, N.J. Stat. Ann. § 21-9; (3) health care claims fraud in the second degree, N.J. Stat. Ann. § 2C:21-4.3a; (4) theft by deception in the second degree, N.J. Stat. Ann. § 2C:20-4; (5) commercial bribery and breach of duty to act disinterestedly in the third degree, N.J. Stat. Ann. §§ 2C:21-10a(2) and 21-10c; (6) criminal running in the third degree, N.J. Stat. Ann. § 2C:21-22.1; (7) conspiracy in the second degree, N.J. Stat. Ann. § 2C:5-2; (8) health care claims fraud in the second degree, N.J. Stat. Ann. § 2C:21-4a; (9) commercial bribery and breach of duty to act disinterestedly in the third degree, N.J. Stat. Ann. §§ 2C:21-10a(3) and 21-10c; and (10) criminal running in the third degree, N.J. Stat. Ann. § 2C:21-22.1. (*Id.* ¶ 222.) Counts One through Six of the superseding indictment related to the same alleged conspiracy between Plaintiff and Hayek charged in the original indictment. (*Id.*

---

[5] The State Defendants also failed to establish "the existence of a referral fee was a 'material' omission, so as to establish fraud within the definition of the Health Care claims fraud statute." (*Id.* ¶ 190.) Rather, the State Defendants merely provided testimony—produced by "improper leading questions"—that "some" of the insurance companies contacted during their investigation stated a "failure to disclose a referral relationship on a claim form 'could potentially' affect their payment of claims." (*Id.* ¶¶ 192–93.)

¶ 223.) Counts Seven through Ten "were based on a second different conspiracy, alleged to have been committed by [Plaintiff] and Adam Awari, a licensed chiropractor." (*Id.*)

The State Defendants claimed in the superseding indictment Plaintiff also paid referral fees to Awari, "who, like Hayek, had already pled guilty to criminal charges and was trying to avoid jail time and preserve his license." (*Id.* ¶ 224.) Plaintiff, however, again maintains these assertions are untrue. (*See id.* ¶¶ 225–33 (further alleging Plaintiff and Awari had referred patients to each other, but their referral relationship was "mutually beneficial, completely above board, and in all respects lawful and proper").) For example, during a proffer session with Awari, the State Defendants, and not Awari, were the first to mention Plaintiff by name and suggest the specific amount of referral fees that were allegedly paid. (*Id.* ¶¶ 249–51.) Moreover, after "Awari gave long, rambling and incoherent responses [in the proffer session]" (*id.* ¶ 256) and "had frequent memory lapses and could not recall critical events" (*id.* ¶ 257), the State Defendants began "asking a series of grossly improper leading questions, essentially testifying as an unsworn witness" (*id.* ¶ 260).[6]

### B. Procedural History

#### 1. State Court Procedural History

On May 23, 2019, the Superior Court Judge Robert M. Vinci dismissed the entire ten-count superseding indictment against Plaintiff. (*Id.* ¶ 282.) Judge Vinci held, *inter alia*, the State Defendants had "*intentionally subverted the grand jury process* resulting in a grand jury presentation that was *fundamentally unfair*" (*id.* ¶ 284), misled and deceived grand jurors (*id.*

---

[6] In addition to the State Defendants' inappropriate line of questioning and presentation of evidence in the proffer sessions of Hayek and Awari and subsequent grand jury proceedings, Plaintiff also alleges the State Defendants failed to provide exculpatory evidence related to the "true nature and extent of the plea deals reached with Hayek and Awari." (*Id.* ¶¶ 266–67; *see also id.* ¶ 268 ("While the State Defendants disclosed some of the details of these plea deals, they deliberately omitted the fact that several other criminal charges had been dropped in exchange for Hayek and Awari's cooperation."); *see generally id.* ¶¶ 269–280.)

¶¶ 285–86), and improperly charged Plaintiff (*id.* ¶ 285). Judge Vinci also held the State Defendants could not establish Plaintiff made any false or fraudulent statements in connection with insurance claims, and that the superseding indictment was "palpably defective." (*Id.* ¶¶ 287–88.) Ultimately, "based on his review of the entire grand jury proceedings, Judge Vinci had *grave doubts that the determination ultimately reached was arrived at fairly and impartially*." (*Id.* ¶ 299 (internal quotation marks and citation omitted).)

### 2. This Court's Procedural History

On September 16, 2020, Plaintiff filed a twelve-count Complaint in this Court against all Defendants except the AG's Office. (*See generally* ECF No. 1.) On October 7, 2020, Plaintiff filed a twelve-count Amended Complaint against all Defendants. (*See generally* ECF No. 5.) Plaintiff asserts his reputation, "both personally and professionally," has been adversely affected by the State Defendants' charges, and that his medical practice is in "complete ruins." (*Id.* ¶ 301.) Moreover, Plaintiff contends press releases issued from the State Defendants detailing their investigation and charges against Plaintiff were unnecessary, picked up by several news outlets throughout the country and world, and "effectively destroyed [Plaintiff's] practice for good." (*See generally id.* ¶¶ 302–35; *see also id.* ¶ 336 ("In sum, [Plaintiff's] pristine reputation as a medical doctor for over 38 years . . . has been thoroughly destroyed by the State Defendants' false accusations and manufactured evidence, which they shamelessly publicized to promote their own political agenda.").)

Plaintiff asserts the following causes of action: (1) violation of 42 U.S.C. § 1983 for the fabrication of evidence against the State Defendants, Hayek, and Awari (*id.* ¶¶ 337–46);[7] (2) violation of § 1983 for malicious prosecution against the State Defendants, Hayek, and Awari

---

[7] Plaintiff alleges Count One against "All Defendants." (ECF No. 5 at 51.) However, Count One, as alleged, appears to only be set forth against the State Defendants, Hayek, and Awari. (*See id.* ¶¶ 338–39.)

(*id.* ¶¶ 347–58);[8] (3) violation of § 1983 for malicious abuse of process against the State Defendants (*id.* ¶¶ 359–64); (4) violation of § 1983 for inducement of false testimony against the State Defendants (*id.* ¶¶ 365–71); (5) conspiracy to violate Plaintiff's civil rights against the State Defendants, Hayek, and Awari (*id.* ¶¶ 372–78);[9] (6) violation of § 1983 for "stigma plus" against the State Defendants and AG Grewal (*id.* ¶¶ 379–91); (7) municipal liability pursuant to § 1983 against the AG's Office (*id.* ¶¶ 392–420); (8) violation of N.J. Stat. Ann. §§ 6:10-1, *et seq.*, for fabrication of evidence against the State Defendants, Hayek, and Awari (*id.* ¶¶ 423–29); (9) violation of N.J. Stat. Ann. §§ 6:10-1, *et seq.*, for malicious prosecution against the State Defendants, Hayek, and Awari (*id.* ¶¶ 430–42);[10] (10) violation of N.J. Stat. Ann. §§ 6:10-1, *et seq.*, for deprivation of Plaintiff's substantive due process rights against the State Defendants (*id.* ¶¶ 443–49); (11) violation of N.J. Stat. Ann. §§ 6:10-1, *et seq.*, for conspiracy against the State Defendants (*id.* ¶¶ 450–54);[11] and (12) intentional infliction of emotional distress ("IIED") against all Defendants (*id.* ¶¶ 455–62).

On December 7, 2020, the Hayek Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 16.) Plaintiff opposed (ECF No. 32), and the Hayek Defendants replied (ECF No. 39). On December 13, 2020, the Awari Defendants

---

[8] Plaintiff alleges Count Two against "All Non-Prosecutorial Defendants." (ECF No. 5 at 53.) However, Count Two, as alleged, appears to be set forth against the State Defendants, Hayek, and Awari. (*See id.* ¶¶ 348–53, 355.)

[9] Plaintiff alleges Count Five against "All Defendants." (ECF No. 5 at 56.) However, Count Five, as alleged, appears to only be set forth against the State Defendants, Hayek, and Awari. (*See id.* ¶¶ 373–74.)

[10] Plaintiff alleges Count Nine against "All Non-Prosecutorial Defendants." (ECF No. 5 at 70.) However, Count Nine, as alleged, appears to be set forth against the State Defendants, Hayek, and Awari. (*See id.* ¶ 432.)

[11] Plaintiff alleges Count Eleven against "All Defendants." (ECF No. 5 at 73.) However, Count Eleven, as alleged, appears to be set forth against the State Defendants. (*See id.* ¶¶ 451–54.)

filed a Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 19.) Plaintiff opposed (ECF No. 35), and the Awari Defendants replied (ECF No. 38). On January 11, 2021, the State Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 28.) Plaintiff opposed (ECF No. 48), and the State Defendants replied (ECF No. 52). Finally, on January 11, 2021, the NJ AG Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and (6). (ECF No. 30.) Plaintiff opposed (ECF No. 44), and the NJ AG Defendants replied (ECF No. 53).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

**III.    DECISION**[12]

**A.    State Defendants**

Plaintiff's Amended Complaint sets forth several causes of action pursuant to § 1983 against the State Defendants: (1) Count One for fabrication of evidence (ECF No. 5 ¶¶ 337–46); (2) Count Two for malicious prosecution (*id.* ¶¶ 347–58); (3) Count Three for malicious abuse of process (*id.* ¶¶ 359–64); (4) Count Four for inducement of false testimony (*id.* ¶¶ 365–71); (5) Count Five for conspiracy to violate Plaintiff's civil rights (*id.* ¶¶ 372–78); and (6) Count Six for "stigma plus" (*id.* ¶¶ 379–91).

**1.    Counts One Through Five**

The State Defendants argue, *inter alia*, Plaintiff's claims against them should be dismissed because they are entitled to absolute prosecutorial immunity. (*See generally* ECF No. 28-1 at 20–31.) "Under federal law, prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors." *Newsome v. City of Newark*, Civ. A. No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). This absolute immunity "extends to employees of a prosecutor, including detectives, 'when the employee's function is closely allied to the judicial process.'" *Id.* (quoting *Davis v. Grusemeyer*, 996 F.2d 617, 631 (3d Cir. 1993)) (citing *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir. 1975)); *see also Moore v. Middlesex Cnty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) (providing that "the employee or agent of a prosecutor, is also granted absolute

---

[12] As a preliminary matter, the Court notes Plaintiff argues, in opposition to both the Awari Defendants and State Defendants' Moving Briefs, that the respective Defendants "conflated the summary judgment standard of Rule 56 with the pleading standard of Rule 12(b)(6) by refusing "to accept Plaintiff's factual allegations as true." (ECF No. 35 at 5; *see also* ECF No. 48 at 26–27 (arguing the State Defendants "have asked the Court to draw inferences against Plaintiff" and "improperly relied upon transcripts and exhibits from other proceedings").) As stated previously, however, in deciding the present Motions, the Court accepts the factual allegations in Plaintiff's Amended Complaint as true, draws all inferences in the light most favorable to Plaintiff, and relies solely on Plaintiff's factual pleadings. *Phillips*, 515 F.3d at 228.

immunity from § 1983 suits where the function of the employee and the judicial process are closely allied").

The Supreme Court has held absolute immunity may apply to § 1983 suits, because "[i]f a prosecutor had only a qualified immunity, the threat of [such] suits would undermine performance of his duties." *Imbler*, 424 U.S. at 424; *see also id.* at 224–25 ("The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."). "However, 'the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Peterson v. Bernardi*, 719 F. Supp. 2d 419, 426 (D.N.J. 2010) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Such an official "bears a heavy burden of establishing entitlement to absolute immunity" due to "the presumption that qualified rather than absolute immunity is appropriate." *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008) (internal quotation marks and citations omitted). To overcome this presumption, the Third Circuit has explained:

> a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question. This inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or quasi-judicial capacity. Thus, immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.

*Id.* at 208. "In other words, when distinguishing between advocative conduct that is intimately associated with the judicial phases of litigation . . . and administrative or investigatory conduct, . . . courts must inquire into both the nature of the conduct at issue and the prosecutor's purposes in undertaking such conduct." *Peterson*, 719 F. Supp. 2d at 433 (citing *Odd*, 538 F.3d at 210). "In this Circuit, this analysis focuses on the unique facts of each case and avoids bright-line rules that would focus on the timing (pre-indictment versus post-indictment) or location (in court versus out

of court) of the alleged misconduct." *Newsome*, 2014 WL 4798783, at *3 (citing *Odd*, 538 F.3d at 210).

The State Defendants argue there are several reasons why they are entitled to absolute immunity. First, the State Defendants assert several of their actions set forth in Plaintiff's Amended Complaint were taken at hearings or at trial and, therefore, "part of the 'prosecutorial' phase and subject to absolute immunity." (ECF No. 28-1 at 23.) According to the State Defendants, these actions include, *inter alia*: (1) the State Defendants' attempt to conceal, "throughout the criminal proceedings," the "true nature and extent" of Hayek and Awari's plea deals (*id.* (quoting ECF No. 5 ¶ 267)); (2) Keiffer's decision not to pursue specific criminal charges against Hayek and Awari (*id.* (citing ECF No. 5 ¶¶ 276–77)); (3) Keiffer's failure to turn over discovery during the criminal trial (*id.* at 24 (citing ECF No. 5 ¶ 279)); (4) Keiffer's improper instructions to the grand jury regarding applicable caselaw (*id.* (citing ECF No. 5 ¶ 293)); (5) Keiffer's presentation of improper and false evidence throughout the grand jury process and criminal proceedings (*id.* at 24–25 (citing ECF No. 5 ¶¶ 198, 204, 351–52)); (6) disregarding discrepancies in Hayek and Awari's testimony and inducing them into making false statements (*id.* at 25–26 (citing ECF No. 5 ¶¶ 247, 261, 370)); and (7) concealing evidence "from both the Judge and from the Grand Jury throughout the criminal proceedings" (*id.* at 26 (quoting ECF No. 5 ¶ 52)). Second, the State Defendants contend "absolute prosecutorial immunity also applies to Defendant Keiffer's decision to seek the initial and superseding indictments against Plaintiff." (*Id.*; *see also id.* at 27 (arguing the actions set forth in Plaintiff's Amended Complaint—including the alteration of a transcript and presentation of the Shared Claims, Summary, and Insurance Billing charts—"allege the precise type of 'trial preparation' that" is entitled to absolute immunity).) Finally, the State Defendants assert the transcript and charts were used to persuade and present evidence to the grand jury, which constitutes advocacy subject to immunity, and not investigatory actions. (*See id.* at 28–31.)

In opposition, Plaintiff argues he "has repeatedly alleged that Defendant Keiffer, as well as the other State Defendants, fabricated evidence during the *investigative* phase—and *not* the advocacy phase—'before [they] ha[d] probable cause to arrest anyone." (ECF No. 48 at 29–30 (citing ECF No. 5 ¶¶ 52, 89, 111, 148, 156, 167, 181, 317, 373) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)); *see also id.* at 31 ("Since Plaintiff has alleged that Keiffer fabricated evidence during the course of the State Defendants['] investigation . . . [the State] Defendants' motion to dismiss based on absolute immunity must be denied." (internal quotation marks and citations omitted)).) Moreover, Plaintiff maintains "virtually all of the State Defendants' unlawful actions took place *prior* to the presentation of evidence to the grand jury." (*Id.* at 32.) Plaintiff asserts, while he has made *factual* allegations regarding the State Defendants' conduct at grand jury proceedings, hearings, and trials, "Plaintiff's *legal claims* . . . are much narrower, and do not involve actions that the State Defendants took at hearings or trials." (*Id.* (internal quotation marks and citation omitted).) Finally, Plaintiff contends that a factual dispute regarding "when, and for what purpose, the fabricated evidence in this case was created" precludes a dismissal pursuant to Rule 12(b)(6). (*Id.* at 33 (arguing that "Plaintiff has consistently alleged that the false evidence was created" during the investigatory phase, while the State Defendants "insist that these same documents were created solely, and lawfully, for purposes of 'trial preparation'").)

In reply, the State Defendants argue "[m]erely adding the phrase 'during the investigation' does not magically strip absolute immunity from otherwise 'core prosecutorial functions.'" (ECF No. 52 at 11; *see also id.* at 11 n.11 ("Indeed, if that were the case, prosecutorial immunity would be no immunity at all, as a plaintiff could simply allege that the prosecutor scripted his direct examination of a grand jury witness 'during the investigatory phase.'").) The State Defendants further assert Plaintiff's arguments set forth an "overly simplistic interpretation of the pleading requirements" examined on a 12(b)(6) motion. (*Id.* at 11.) The Court agrees.

"The mere invocation of the catch-word 'investigatory' . . . cannot suffice in this case to forestall dismissal on immunity grounds." *Rose v. Bartle*, 871 F.2d 331, 345 (3d Cir. 1989). In *Rose*, the plaintiffs alleged the prosecutor defendants solicited and procured "perjured testimony by coercion" for use in grand jury proceedings. *Id.* at 343–44. The district court rejected the plaintiffs' arguments that such actions were investigatory and held "solicitation of testimony is intimately related to the judicial proceedings." *Id.* at 344. The Third Circuit affirmed the district court's finding of absolute immunity and noted that "[a]lthough the plaintiffs . . . characterize the solicitation and coercion of perjury by the defendants as having taken place while the defendants were acting in an 'investigative capacity,' they proffer no adequate explanation for such a characterization." *Id.* (further finding "there [was] no elaboration in the pleadings regarding the circumstances in which the alleged solicitations of perjury took place" and noting "the plaintiffs do not dispute . . . that their allegations involved the solicitation and preparation of perjured testimony 'for use in the grand jury proceedings'"). The court ultimately held the solicitations in question were "encompassed within the preparation necessary to present a case and therefore are immunized as involving the prosecutor's advocacy functions." *Id.*

Similarly, here, despite Plaintiff's assertions that the State Defendants' conduct was performed in an investigative capacity (*see, e.g.*, ECF No. 5 ¶¶ 111, 148, 156, 181), the Amended Complaint's factual allegations set forth conduct that was carried out in preparation of, and for use in, grand jury proceedings. For example, Plaintiff alleges, in detail, how the State Defendants manufactured evidence:

> i) creating a false and misleading transcript of a recording a conversation between Dr. Ramnanan and Hayek, so as to materially alter the meaning of the actual words spoken between the two of them; ii) creating false and misleading "summary" charts which improperly aggregated the insurance claims submitted by Dr. Ramnanan, thereby vastly increasing the alleged amount of "fraud" committed by him; iii) commingling the claims submitted by Dr.

> Ramnanan with the claims submitted by Hayek, thereby creating a "shared" claims chart that was completely fictitious; iv) commingling the referrals submitted by other medical practitioners to Dr. Ramnanan with those of Hayek, thereby vastly overstating the amount of patients that Hayek had actually referred to Dr. Ramnanan for EMG/NCV tests; and v) creating summary charts which improperly aggregated all of the insurance payments made to all of the alleged referral fee patients, for purposes of establishing a completely fictitious sum of $682,000.00 in "fraudulent billing."

(*Id.* ¶ 90; *see generally id.* ¶¶ 91–204 (discussing each form of conduct in further detail).) The Amended Complaint goes on to allege this conduct and accompanying fabricated evidence were ultimately used in grand jury and subsequent criminal proceedings. (*See, e.g.*, *id.* ¶ 111 (alleging the State Defendants' altered transcript was presented to the grand jury); *id.* ¶ 146 (alleging the Shared Claims chart and its material omissions "allowed the State Defendants . . . to persuade the Grand Jury to indict" Plaintiff); *id.* ¶ 160 (alleging the "false and misleading" Summary Chart was "used by the State Defendants during the second grand jury proceeding . . . to secure an indictment against" Plaintiff); *id.* ¶ 204 (alleging the false Insurance Billing chart was used "during presentation to the Grand Jury, to secure an indictment").) As Plaintiff alleges when discussing the State Defendants' altered transcript, "[w]ithout this piece of manufactured evidence, the State Defendants' case could not have moved forward, much less have been presented to a grand jury and used to secure an indictment." (*Id.* ¶ 102.) Moreover, Plaintiff details Judge Vinci's eventual dismissal of the State Defendants' indictment, stating, *inter alia*, "[o]nce Judge Vinci had an opportunity to carefully review the evidence presented to the Grand Jury, the State Defendants' manufactured case came to a crashing halt" and "Judge Vinci left no doubt that the State Defendants had engaged in grave misconduct in presenting their case to the grand jury." (*Id.* ¶¶ 281, 283.)

"[C]ourts have held prosecutorial activities extend to 'the preparation necessary to present a case' and the 'obtaining, reviewing, and evaluation of evidence.'" *Newsome*, 2014 WL 4798783, at *3 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414, 1417 (3d Cir. 1991)). "This may include soliciting testimony from grand jury witnesses and conducting interviews to generate evidence to be presented to the grand jury." *Zisa v. Haviland*, Civ. A. No. 17-5551, 2020 WL 1527862, at *3 (D.N.J. Mar. 31, 2020) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992)); *see also Michaels v. New Jersey*, 50 F. Supp. 2d 353, 359 (D.N.J. 1999) ("Examples of such [quasi-judicial] functions include . . . preparing for grand jury or trial proceedings."). Here, although Plaintiff asserts the State Defendants' acted solely in an investigative capacity, the crux of Plaintiff's Amended Complaint is that the State Defendants' impropriety and evidence fabrication in preparation for and during grand jury proceedings led to his indictment and subsequent damaged reputation. (*See, e.g.*, ECF No. 5 ¶¶ 340, 343–44, 348, 351, 353, 356, 370, 376.) Such conduct, however, falls under judicial and advocacy functions entitled to absolute prosecutorial immunity. *See, e.g.*, *Rose*, 871 F.2d at 344 ("The plaintiffs' allegations involve direct solicitations of testimony for use in the grand jury proceedings. Such solicitations are encompassed within the preparation necessary to present a case and therefore are immunized as involving the prosecutors' advocacy functions."); *Michaels*, 50 F. Supp. 2d at 359 ("[Plaintiff] enjoys absolute immunity for all of her activities in preparation for the grand jury proceedings and the actual trial, including witness preparation. This includes her. . . reliance on evidence subsequently deemed unreliable by the Supreme Court of New Jersey."). The Court, therefore, finds the State Defendants are entitled to absolute immunity for Plaintiff's § 1983 claims related to advocacy functions: fabrication of evidence (ECF No. 5 ¶¶ 337–46); malicious prosecution (*id.* ¶¶ 347–58); malicious abuse of process (*id.* ¶¶ 359–64); inducement of false testimony (*id.* ¶¶ 365–71); and conspiracy to violate Plaintiff's civil rights (*id.* ¶¶ 372–78). Accordingly, the State Defendants' Motion to Dismiss as to

Counts One through Five of Plaintiff's Amended Complaint is **GRANTED**, and Counts One through Five of against the State Defendants are **DISMISSED WITHOUT PREJUDICE**.

### 2. Count Six

In Count Six, Plaintiff alleges the State Defendants issued two press releases that publicized Plaintiff's indictments. (*Id.* ¶ 302.) According to Plaintiff, the press releases were used "to promote and publicize the work of the Commercial Bribery Task Force" and "make it appear as [if] this unit was highly successful in exposing massive fraud in the medical industry." (*Id.* ¶ 304.) The press releases, however, were "based upon the same lies—and the same manufactured evidence—that the State Defendants had used to support their specious claim that [Plaintiff] was engaged in a 'kickback scheme.'" (*Id.* ¶ 311; *see also id.* ¶ 317.) Both press releases were picked up by several media outlets and spread throughout social media. (*Id.* ¶¶ 312, 328.) As a result, Plaintiff lost many patients and suffered "severe humiliation and embarrassment amongst his friends, family and professional colleagues." (*Id.* ¶ 313; *see also id.* ¶¶ 331–333 (further alleging that, following the second press release, Plaintiff "started losing his patients in droves, and new patients were impossible to bring in").)

As a preliminary matter, the Court cannot discern, nor do the State Defendants indicate, how creating and issuing a press release detailing an indictment falls within the advocacy functions protected by absolute immunity. *See Odd*, 538 F.3d at 211 ("Likewise, some acts are so far removed from the 'judicial phases of litigation' that we do not hesitate to label them administrative."). Accordingly, the Court finds the State Defendants have not met their burden of establishing they are entitled to absolute immunity as it relates to Count Six of Plaintiff's Amended Complaint.

The State Defendants, however, alternatively argue Plaintiff has failed to plausibly allege a claim for "stigma plus" under § 1983. (ECF No. 28-1 at 56.) They argue, *inter alia*, "Plaintiff

has not alleged the loss of a cognizable 'property interest' for purposes of establishing the 'plus' portion of his 'stigma plus' claim." (*Id.* at 58; *see also* ECF No. 52 at 9 n.9 ("Plaintiff relies on cases [concerning] 'public employment' and/or the loss of a state-issued license or privileges[,] *e.g.* a right created by state law.").) In opposition, Plaintiff asserts he possesses a cognizable property interest "in his career as a medical doctor," which can invoke the protections of the Due Process Clause of the Fourteenth Amendment. (ECF No. 48 at 59–60.) Plaintiff, accordingly, argues his allegations of "permanent loss of his occupation as a medical doctor, and permanent loss of his medical practice" "are more than sufficient to satisfy the 'plus' requirement for a stigma plus claim." (*Id.* at 60.)

"The Supreme Court [has] held . . . that an individual has a protectable interest in reputation." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006). Reputation alone, however, "is not an interest protected by the Due Process Clause." *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (collecting cases). Courts "refer[] to this as the 'stigma plus' test." *Id.* (citation omitted).

"While the Supreme Court has recognized the severity of depriving a person of the means of livelihood in the public employment context, neither the Supreme Court nor any other Court of Appeals has recognized a protected interest in private employment." *Cooley v. Barber*, Civ. A. No. 07-3327, 2007 WL 2900550, at *2 (3d Cir. 2007). Here, Plaintiff alleges the press releases issued by the State Defendants "caused severe, permanent and irreparable harm to [his] reputation, and destroyed his career as a medical doctor." (ECF No. 5 ¶ 387.) While Plaintiff has plausibly alleged the loss of private employment, "he has failed to allege the deprivation of an interest protected by the Constitution or state law." *See Cooley*, 2007 WL 2900550, at *2 (affirming district

court's dismissal of complaint where "[a]ppellant allege[d] that he suffered 'loss of employment' because he was no longer able to perform maintenance at his family's hair salon as a result of the alleged defamation by [police officer] defendants"); *see also Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding respondent could not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment" and, therefore, "petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause"); *Lockhart v. City of Easton*, Civ. A. No. 12-0133, 2013 WL 5225234, at *9 (E.D. Pa. Sept. 17, 2013) ("Even if [p]laintiffs could show that [d]efendants prepared the alleged [press] release . . . , their claim would still fail, since [plaintiff] claims nothing more than reputational injury and loss of private employment, and has thus failed to satisfy the 'plus' prong of the 'stigma-plus' test.").

The Court, therefore, finds Plaintiff has failed to plausibly allege a "stigma plus" claim under § 1983. Accordingly, the State Defendants' Motion to Dismiss Count Six of Plaintiff's Amended Complaint is **GRANTED**, and Count Six against the State Defendants is **DISMISSED WITHOUT PREJUDICE**.

### B. Hayek Defendants and Awari Defendants

Plaintiff's Amended Complaint also sets forth several causes of action pursuant to § 1983 against the Hayek Defendants and Awari Defendants: (1) Count One for fabrication of evidence (ECF No. 5 ¶¶ 337–46); (2) Count Two for malicious prosecution (*id.* ¶¶ 347–58); and (5) Count Five for conspiracy to violate Plaintiff's civil rights (*id.* ¶¶ 372–78).

The Hayek Defendants and Awari Defendants both argue, *inter alia*, they are not state actors and, therefore, cannot act under the color of state law for purposes of § 1983. (ECF No. 16-1 at 7; ECF No. 19 at 8.) Moreover, the Hayek Defendants and Awari Defendants contend Plaintiff's Amended Complaint fails to set forth factual allegations demonstrating a private actor

exception to § 1983 applies to this matter. (ECF No. 16-1 at 9; ECF No. 19 at 9.) In opposition, Plaintiff asserts his Amended Complaint plausibly alleges the Hayek Defendants and Awari Defendants acted jointly with the State Defendants and, therefore, can be sued under § 1983. (ECF No. 32 at 7; ECF No. 35 at 7.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Private individuals, however, "may nonetheless be liable under § 1983 if they have conspired with or engaged in joint activity with state actors." *Mikhaeil v. Santos*, 646 F. App'x 158, 162 (2016) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)).

Under the "joint action" test, "a private party will be deemed a state actor if it is a 'willful participant in joint action with the State or its agents.'" *Surina v. S. River Bd. of Educ.*, Civ. A. No. 17-2173, 2018 WL 1327111, at *4 (D.N.J. Mar. 15, 2018) (quoting *Cahill v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013)) (citing *Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984)). Here, however, Plaintiff's Amended Complaint is replete with factual allegations that the State Defendants "coerced [Hayek and Awari] to give false, misleading and dishonest testimony, for the purpose of generating a 'high profile' case that could advance their careers and promote their own political agendas." (ECF No. 5 ¶ 1; *see also id.* ¶ 368 ("Neither Hayek nor Awari, had identified [Plaintiff], much less alleged that he was involved with a 'kickback scheme.' It was only after the State Defendants *threatened, harassed, intimidated, bribed and coerced them* that they finally identified [Plaintiff] as a participant in the "kickback scheme." (emphasis added)).) Plaintiff,

therefore, has failed to plausibly allege the Hayek Defendants and Awari Defendants acted jointly with the State Defendants in this matter. *See, e.g.*, *Stokes v. Eldred*, Civ. A. No. 19-20600, 2021 WL 2103256, at *4 (D.N.J. May 25, 2011) (dismissing § 1983 claim against private actor where a detective "did not allow [the private actor] to freely speak of any truth" and, instead, coerced the private actor "into agreeing that [he] purchased" heroin from the plaintiff). Because "[t]he color of state law element is a threshold issue [and] there is no liability under § 1983 for those not acting under color of law," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), the Hayek Defendants and Awari Defendants' Motions to Dismiss Plaintiff's § 1983 claims are **GRANTED**. Accordingly, Counts One, Two, and Five against the Hayek Defendants and Awari Defendants are **DISMISSED WITHOUT PREJUDICE**.

### C. NJ AG Defendants

Plaintiff's Amended Complaint sets forth two causes of action against the NJ AG Defendants. For efficiency purposes, the Court will address each count in reverse order.

#### 1. Count Seven

Against the AG's Office, Count Seven sets forth a municipal liability claim under § 1983. (ECF No. 5 ¶¶ 392–420.) Plaintiff asserts the AG's Office was deliberately indifferent toward the training and supervision of their attorneys "regarding the ethical boundaries of presenting evidence against the accused." (*Id.* ¶ 394.) Moreover, Plaintiff alleges the AG's Office fails to punish its attorneys, including Keiffer, for prosecutorial misconduct. (*Id.* ¶¶ 398–400.) According to Plaintiff, the AG's Office's "policy of 'law discipline[]' has created an atmosphere which encourages Assistant Attorney Generals to engage in prosecutorial misconduct, as such prosecutors know that they will *not* be punished and/or disciplined in any way, no matter how egregious their acts of prosecutorial misconduct might be." (*Id.* ¶ 403.) Finally, Plaintiff contends the AG's Office failed to train its prosecutors by, *inter alia*, failing to properly instruct with regard

to (1) "their obligations to discontinue a criminal prosecution when evidence is discovered which negates probable cause and exonerates the accused"; (2) "their obligations to avoid threatening, intimidating and/or coercing potential defense witnesses"; and (3) "their obligations to avoid interfering with a defendant's constitutional right to a fair trial by giving false, erroneous and misleading instructions to the grand jury." (*Id.* ¶ 412.)

In support of dismissal of Count Seven, the NJ AG Defendants argue, *inter alia*, the AG's Office is not amenable to suit under § 1983. (ECF No. 30-1 at 12.) Plaintiff does not appear to oppose the NJ AG Defendants' arguments in this regard. (*See generally* ECF No. 44.)

"It is well-established that the state and state entities are not 'persons' for purposes of § 1983, and thus, are not amenable to suit under that statute." *Dalton v. New Jersey*, Civ. A. No. 17-4094, 2018 WL 305326, at *5 (D.N.J. Jan. 5, 2018) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012)). "Indeed, following the Supreme Court's decision in *Will*, courts within this District have routinely dismissed § 1983 claims against the . . . [AG's Office] on the grounds that [that] entit[y is] not [a] 'person[]' subject to suit under § 1983." *Id.* (collecting cases); *see also Curtis v. N.J. State Police*, Civ. A. No. 19-21164, 2020 WL 7828806, at *6 (D.N.J. Dec. 30, 2020) (denying cross-motion to amend complaint "to the extent it [sought] to add the [AG's Office] as a defendant" in a § 1983 suit). Accordingly, the NJ AG Defendants' Motion to Dismiss Count Seven is **GRANTED**, and Count Seven against the AG's Office is **DISMISSED WITH PREJUDICE**.

### 2. Count Six

Count Six sets forth a "stigma plus" claim pursuant to § 1983 against AG Grewal in both his official and individual capacity. (ECF No. 5 ¶¶ 379–91.) Plaintiff alleges AG Grewal "greatly exacerbated the harm caused by" the State Defendants' second press release regarding Plaintiff's indictment, which was "based on false evidence." (*Id.* ¶¶ 380, 385.) Plaintiff asserts AG Grewal

used the second press release "for his own personal gain and political agenda, as well as the political agenda of the New Jersey State Attorney General's Office." (*Id.* ¶ 385.) Plaintiff maintains his "reputation was severely and permanently destroyed" by AG Grewal's actions. (*Id.* ¶ 388; *see also id.* ¶ 391.)

As Count Six relates to AG Grewal's official capacity, the NJ AG Defendants argue AG Grewal is not a person amenable to suit under § 1983. (ECF No. 30-1 at 12.) In response to the NJ AG Defendants' arguments related to AG Grewal's official capacity, "Plaintiff agrees to voluntarily dismiss such claims." (ECF No. 44 at 23 n.4.) Accordingly, the NJ AG Defendants' Motion to Dismiss Count Six as it relates to AG Grewal in his official capacity is **GRANTED**, and Count Six is **DISMISSED WITH PREJUDICE**.[13]

As to Count Six as it relates to AG Grewal in his individual capacity, the NJ AG Defendants argue, *inter alia*, Plaintiff has failed to plausibly allege a "stigma plus" claim under § 1983 because he has failed to allege, in addition to a reputational stigma, "the deprivation of an additional, *protected* interest at stake." (ECF No. 30-1 at 24.) According to the NJ AG Defendants, "Plaintiff's averred interest concerns his loss of private employment and the embarrassment and humiliation that he incurred." (*Id.* at 25.) "However, courts do not recognize a protected constitutional interest in private employment, nor is there an independent constitutional right to be free of embarrassment, disrespect and/or humiliation." (*Id.*) For the reasons previously stated in Section III.A.2., *supra.*, the Court agrees. Accordingly, the NJ AG Defendants' Motion to Dismiss Count

---

[13] In addition to Plaintiff's voluntary dismissal, the Court notes "the *Will* Court recognized that although state officials are 'literally persons[,]' . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Dalton*, 2018 WL 305326, at *6 (quoting *Will*, 491 U.S. at 71). "Thus, because a suit against a state official acting in his or her capacity is no different from a suit against the state itself, the *Will* Court held that a plaintiff cannot bring a § 1983 claim against a state actor for conduct occurring in his or her official capacity." *Id.* (citing *Will*, 491 U.S. at 71; *Smith*, 908 F. Supp. 2d at 563).

Six against AG Grewal in his individual capacity is **GRANTED,** and Count Six against AG Grewal is **DISMISSED WITHOUT PREJUDICE**.

### D.    State Law Claims

Finally, Plaintiff's Amended Complaint sets forth several state law causes of action: (1) Count Eight for violation of civil rights pursuant to N.J. Stat. Ann. §§ 6:10-1, *et seq.*, against the State Defendants, Hayek Defendants, and Awari Defendants (ECF No. 5 ¶¶ 423–29); (2) Count Nine for malicious prosecution pursuant to N.J. Stat. Ann. §§ 6:10-1, *et seq.*, against the State Defendants, Hayek Defendants, and Awari Defendants (*id.* ¶¶ 430–42); (3) Count Ten for deprivation of substantive due process pursuant to N.J. Stat. Ann. §§ 6:10-1, *et seq.*, against the State Defendants (*id.* ¶¶ 443–49); (4) Count Eleven for conspiracy pursuant to N.J. Stat. Ann. §§ 6:10-1, *et seq.*, against the State Defendants (*id.* ¶¶ 450–54); and (5) Count Twelve for intentional infliction of emotional distress against all Defendants (*id.* ¶¶ 455–62).

This Court has federal question subject matter jurisdiction over Plaintiff's Amended Complaint pursuant to 28 U.S.C. 1331. (*Id.* ¶ 3.) The Court, however, has dismissed all of Plaintiff's federal causes of action. Accordingly, the Court **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Moses v. Amazon.com.dedc LLC*, Civ. A. No. 16-8675, 2021 WL 2187080, at *7 (D.N.J. May 28, 2021).

## IV.    CONCLUSION

For the reasons set forth above the Hayek Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED**, the Awari Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED**, the State Defendants' Motion to Dismiss (ECF No. 28) is **GRANTED**, the NJ AG Defendants' Motion to

Dismiss (ECF No. 30) is **GRANTED**, and the Court **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over Plaintiff's remaining state law claims. An appropriate order follows.

Date: June 30, 2021

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**