**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. TERRY RAMNANAN, <br><br> Plaintiff, <br><br> v. <br><br> COLLIN KEIFFER, ESQ., *et al.*, <br><br> Defendants. | Civil Action No. 20-12747 (ZNQ) (LHG) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon Defendants Colin Keiffer ("Keiffer"), Wendy Berg ("Berg"), Grace Proetta ("Proetta") and John Campanella's ("Campanella") (collectively "State Defendants") Motion to Dismiss Plaintiff Dr. Terry Ramnanan's ("Plaintiff") Second Amended Complaint (ECF No. 77), Defendants Ronald Hayek, D.C. ("Hayek") and Union Wellness Center P.A. LLC's ("Union Wellness") (collectively "Hayek Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 87), and Defendant Adam Awari, D.C. ("Awari") and Advanced Chiro Spine Center P.C.'s ("Advanced Chiro") (collectively "Awari Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 81). Plaintiff opposed all motions (ECF Nos. 95, 96, 100), and State Defendants (ECF No. 103) and Hayek Defendants replied (ECF No. 104). After careful consideration of the Parties' submissions, the Court decides the Parties' Motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Count One of Plaintiff's Second Amended Complaint is dismissed without

prejudice and Counts Two and Three are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims in this matter.

I. **BACKGROUND**[1]

    A. **Factual Background**

The Court, cognizant it writes for the benefit of parties familiar with this matter, adopts and incorporates the factual background set forth in the Court's previous Opinion dismissing Plaintiff's First Amended Complaint. (Op. 2-10, ECF No. 56.) In its Opinion today, the Court focuses only on additional allegations brought in Plaintiff's Second Amended Complaint and whether such additions render Plaintiff's Second Amended Complaint capable of surviving Defendants' Motions to Dismiss.[2]

    B. **The Court's Previous Opinion**

On June 30, 2021, this Court dismissed all counts against State Defendants, Hayek Defendants, and Awari Defendants without prejudice. (*See generally id.*)

        1. *State Defendants*

As against State Defendants, Plaintiff's First Amended Complaint brought six federal counts and five state law counts. (*Id.* at 8-9.) The six federal counts were: (1) violation of 42 U.S.C. § 1983 for the fabrication of evidence; (2) violation of § 1983 for malicious prosecution; (3) violation of § 1983 for malicious abuse of process against the State Defendants; (4) violation of § 1983 for inducement of false testimony; (5) conspiracy to violate Plaintiff's civil rights; and (6) violation of § 1983 for "stigma plus." (*Id.*)

---

[1] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] While the Court adopts the entirety of the Court's previous Opinion's background, the Court changes the citations of relevant facts to comport with their location within Plaintiff's Second Amended Complaint.

In evaluating federal counts one through five, the Court found that State Defendants were protected from all counts by absolute immunity. (*Id.* at 18-19.) Specifically, the Court found that "although Plaintiff asserts [] State Defendants' acted solely in an investigative capacity, the crux of Plaintiff's Amended Complaint is that [] State Defendants' impropriety and evidence fabrication in preparation for and during grand jury proceedings led to his indictment." (*Id.* at 18.) As the Court found that Plaintiff's allegations were directed at State Defendants' prosecutorial functions, as opposed to any investigatory function, absolute immunity attached. (*Id.*) As to federal count six, the Court found that Plaintiff failed to plausibly allege a "stigma plus" claim under § 1983 where he only pled the alleged loss of private employment, which is not a deprivation of a protected interest under the Constitution or state law. (*Id.* at 20-21.) As such, all federal counts were dismissed against State Defendants.

Plaintiff also brought five state law counts against State Defendants: (1) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for fabrication of evidence; (2) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for malicious prosecution; (3) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for deprivation of Plaintiff's substantive due process rights; (4) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for conspiracy; and (5) intentional infliction of emotional distress ("IIED"). (*Id.* at 9.) As all the federal claims against State Defendants were dismissed, the Court declined to exercise supplemental jurisdiction over the state law claims. (*Id.* at 26.)

2. *Hayek Defendants and Awari Defendants*

Plaintiff's First Amended Complaint also brought three federal counts and three state law counts against Hayek Defendants and Awari Defendants. (*Id.* at 8-9.) The three federal counts were: (1) violation of 42 U.S.C. § 1983 for the fabrication of evidence; (2) violation of § 1983 for malicious prosecution; and (3) conspiracy to violate Plaintiff's civil rights. (*Id.*)

3

The Court previously found that Plaintiff could not sustain any of his federal counts against Hayek Defendants and Awari Defendants because Plaintiff "failed to plausibly allege [] Hayek Defendants and Awari Defendants acted jointly with [] State Defendants in this matter." (*Id.* at 23.) As such, Hayek Defendants and Awari Defendants cannot be considered state actors acting under the color of law. (*Id.* at 22-23.) In so finding, the Court noted that "Plaintiff's [First] Amended Complaint [was] replete with factual allegations that [] State Defendants 'coerced [Hayek and Awari] to give false, misleading and dishonest testimony.'" (*See id.* at 22.) Such allegations effectively negated any claim that State Defendants and either Hayek Defendants or Awari Defendants were working jointly towards a common goal. (*See id.*) Accordingly, all federal counts were dismissed against Hayek Defendants and Awari Defendants without prejudice. (*Id.* at 23.) Moreover, because all federal counts were dismissed against Hayek Defendants and Awari Defendants, the Court again declined to exercise supplemental jurisdiction over the state law counts brought against them.

Despite granting all Defendants' Motions to Dismiss, the Court did so without prejudice to give Plaintiff the opportunity to clarify his pleadings and address the concerns the Court raised in its Opinion. (Order, ECF No. 57.) Accordingly, the Court granted Plaintiff leave to file a second amended complaint, which he timely did on September 13, 2021. (ECF No. 71.)

### C.     Changes in Second Amended Complaint

In his Second Amended Complaint, Plaintiff makes several significant changes. (*See generally* Second Am. Compl., ECF No. 71.) To begin, Plaintiff no longer brings any claims against the Attorney General and his office, and Plaintiff now alleges only eight counts against remaining Defendants, as opposed to the previous twelve counts alleged. (*Id.* ¶¶ 307-73.)

4

*1.     Amended Allegations Against State Defendants*

As against State Defendants, Plaintiff brings only three federal counts: (1) violation of § 1983 for the fabrication of evidence; (2) violation of § 1983 for malicious prosecution;[3] and (3) conspiracy to violate Plaintiff's civil rights brought under § 1983.[4] (*Id.* ¶¶ 307-332.) Plaintiff, however, brings the same five state law counts against State Defendants: (1) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for fabrication of evidence; (2) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for malicious prosecution; (3) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for deprivation of Plaintiff's substantive due process rights; (4) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for conspiracy; and (5) IIED. (*Id.* ¶¶ 333-73.)

The Court previously found that State Defendants were absolutely immune from Plaintiff's claims under § 1983. (Op. at 18.) The basis for the Court's finding was that Plaintiff's allegations against State Defendants alleged wrongdoing committed by State Defendants when they were performing protected prosecutorial functions, i.e., presenting information to a grand jury. (*Id.* at 20-21.) Plaintiff now alleges, while retaining his previous pleadings about misleading evidence being presented to a grand jury, that State Defendants presented fabricated evidence to Plaintiff in an effort to gain his cooperation in investigating potential claims against Todd Koppel M.D. ("Koppel"). (Second Am. Compl. ¶¶ 119, 164, 181, 251.)

---

[3] Plaintiff alleges Count Two is only brought against Defendants Berg, Proetta, and Campanella, but then each allegation contained in Count Two is brought against "State Defendants," defined in the Second Amended Complaint as including Keiffer. (Second Am. Compl. ¶¶ 12, 317-25.) As such, the Court interprets Counts Two as being brought against all State Defendants, including Keiffer, in their individual capacities.

[4] Plaintiff is no longer pursuing the following claims: (1) violation of § 1983 for malicious abuse of process against the State Defendants; (2) violation of § 1983 for inducement of false testimony; or (3) violation of § 1983 for "stigma plus." (*See generally* Am. Compl., ECF No. 5; Second Am. Compl.)

More specifically, Plaintiff alleges that in Spring 2016, State Defendants were investigating Koppel as a "leader of a multi-million-dollar insurance fraud scheme," but "were having trouble finding evidence to corroborate their suspicions." (*Id.* ¶¶ 61, 62, 67.) Plaintiff further alleges that State Defendants believed Plaintiff had critical information for the Koppel investigation and sought to gain his cooperation by any means necessary, even if that meant fabricating evidence. (*See generally id.* ¶¶ 69-123.) In particular, Plaintiff alleges that State Defendants provided him four misleading or fabricated pieces of evidence that State Defendants threatened would be used against Plaintiff if he did not cooperate with their investigation. (*Id.* ¶¶ 70, 83, 86, 90, 99, 108, 113, 146, 156, 157, 161, 164, 173, 181, 182, 193.)

The four pieces of evidence Plaintiff alleges are fabricated are: 1) the "Kickback Spreadsheet"; 2) the "Hayek Audio Transcript"; (3) the "Summary Chart"; and (4) the "Insurance Billing Chart." (*Id.*) At least one of these alleged fabricated pieces of evidence, the Kickback Spreadsheet, is alleged to have been provided to Plaintiff before either his 2017 indictment or 2018 superseding indictment. (*Id.* ¶¶ 83, 131, 196.) Two other documents, the Summary Chart and Insurance Billing Chart, were provided to Plaintiff between the return of the first indictment and superseding indictment. (*Id.* ¶¶ 155-65, 173-86.) It is not clear from the pleadings when State Defendants presented Plaintiff with the Hayek Audio Transcript, but Plaintiff nevertheless alleges it was provided to him in an effort to get him to cooperate in the Koppel investigation. (*Id.* ¶¶ 98-123.)

### 2. *Amended Allegations Against Hayek and Awari Defendants*

As against Hayek Defendants and Awari Defendants, Plaintiff brings only four state law counts: (1) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for fabrication of evidence; (2) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for malicious prosecution; (3) violation of N.J. Stat. Ann. §§ 6:10-1, et seq., for conspiracy; and (4) IIED. (*Id.* ¶¶ 335-53, 361-73.)

The Court previously found that "Plaintiff's [First] Amended Complaint [was] replete with factual allegations that [] State Defendants 'coerced [Hayek and Awari] to give false, misleading and dishonest testimony,'" effectively negating any claim that State Defendants and either Hayek Defendants or Awari defendants were working jointly towards a common goal. (*See* Op. at 22.) Plaintiff's Second Amended Complaint seeks to rectify this by adding allegations suggesting that Hayek and Awari were willing participants in a scheme to bring fraudulent charges against Plaintiff. (*See* Second Am. Compl. ¶¶ 33-39, 206-16, 328 (suggesting Awari fraudulently implicated Plaintiff in a criminal scheme in order to avoid jail time, an action that was made in concert with State Defendants).)

Specifically, as to Hayek, Plaintiff alleges that State Defendants offered him an opportunity to avoid jail time and retain his chiropractic license if he provided additional names for State Defendants' investigation into kickbacks. (*Id.* ¶¶ 36, 38.) Plaintiff then alleges that Hayek, faced "[w]ith an offer he could not refuse, [] joined [] State Defendants' prosecution team and became fully invested in their shared goal of manufacturing a case against as many doctors as possible, so as to avoid prison time and preserve his license as a chiropractor." (*Id.* ¶ 38.) One of the doctors Hayek allegedly implicated in this scheme was Plaintiff. (*Id.* ¶¶ 40-45.)

Plaintiff alleges that State Defendants similarly offered Awari a deal wherein he could avoid jail time and retain his chiropractic license if he cooperated in State Defendants' kickback investigation. (*Id.* ¶ 206.) Plaintiff alleges that State Defendants were unable to get the answers

7

they wanted from Awari, so State Defendants "instead chose to give [Awari] the answers that they wanted." (*Id.* ¶ 242.) In doing so, Plaintiff alleges, State Defendants asked Awari "leading, coercive, and improperly suggestive questions" so that he would implicate Plaintiff as a guilty party. (*Id.* ¶ 247.) Unlike his allegations against Hayek, Plaintiff does not allege that Awari was fully invested in manufacturing a case against Plaintiff. (*See generally id.*) Plaintiff does, however, state "Awari agreed to engage in and engaged in the fabrication of evidence in violation of" Plaintiff's rights.[5] (*Id.* at 309.)

The Court now must consider whether these revised allegations against State Defendants, Hayek Defendants, and Awari Defendants can survive Defendants' Motions to Dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[6] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

---

[5] Plaintiff continues to allege that Hayek and Awari were coerced by State Defendants to make statements against Plaintiff or suborned to commit perjury. (Second Am. Compl. ¶¶ 1, 247, 328 (stating that State Defendants "suborned perjury" from Hayek and Awari while "acting in concert" with them to do so) 330, 346, 358, 364, 368.)

[6] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

After consideration of the Parties' arguments, the Court finds that absolute immunity protects State Defendants from all federal counts brought against them. As such, Count One is dismissed without prejudice and Counts Two and Three are dismissed with prejudice. As Counts One through Three are the only federal claims left in this matter and they are all dismissed, the Court declines supplemental jurisdiction over the five remaining state law claims brought against State Defendants, Hayek Defendants, and Awari Defendants.

### A.    Federal Counts Against State Defendants

The Court finds that Plaintiff cannot state claims against State Defendants upon which relief can be granted because State Defendants are protected by absolute immunity. The Third Circuit recognizes two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). "Most public officials are entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). In a narrow set of circumstances, however, a public official may be shielded by absolute immunity. *See Fogle v. Sokol*, 957 F.3d 148, 156, 159 (3d Cir. 2020). Specifically, "[a]bsolute immunity exists

9

for those officers who perform judicial or quasi-judicial functions." *Michaels v. New Jersey,* 50 F. Supp. 2d 353, 359 (D.N.J. 1999) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)). This group squarely includes state prosecutors. *See Fogle*, 957 F.3d at 158-61. "Other officers, such as investigators, [typically only] enjoy qualified immunity for their discretionary functions." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 340 (1986)). That is unless the investigator is "performing investigative work in connection with a criminal prosecution," in which case, such investigator deserves "the same absolute immunity as the prosecutor." *Fuchs v. Mercer County.*, 260 F. App'x 472, 475 (3d Cir. 2008).

Here, Keiffer is a state prosecutor to whom absolute immunity may attach. (Second Am. Compl. ¶ 8.) Berg, Proetta, and Campanella are detectives to whom absolute immunity will only attach if their functions are found to be the same as that of a prosecutor. (*Id.* ¶¶ 9-11; *Cf. Fogle*, 957 F.3d at 164 (citing *Buckley*, 509 U.S. at 268).) As at all times in Plaintiff's Second Amended Complaint he treats Keiffer, Berg, Proetta, and Campanella as acting collectively, the Court considers Keiffer, Berg, Proetta, and Campanella's actions collectively. (*See generally* Second Am. Compl.) Accordingly, the Court focuses on absolute immunity as it applies to "prosecutors," lumping Berg, Proetta, and Campanella into the same analysis it conducts for Keiffer, due to State Defendants' alleged collective, critical role in investigating and prosecuting Plaintiff. *See Fuchs*, 260 F. App'x at 475 ("[I]nvestigators for a prosecutor performing investigative work in connection with a criminal prosecution deserve the same absolute immunity as the prosecutor.").

As the Court's absolute immunity analysis and its assessment of the merit of Plaintiff's claims overlap, the Court addresses both contemporaneously through the lens of an absolute immunity analysis.

The Third Circuit's Opinion in *Fogle* instructs this Court's absolute immunity analysis. *Fogle*, 957 F.3d at 158-163 (providing a comprehensive overview of the legal development of absolute immunity and detailing relevant case law for a district court's absolute immunity analysis). After consideration of Plaintiff's allegations under *Fogle*, the Court concludes for the reasons set forth below that absolute immunity attaches to protect State Defendants from all federal counts brought against them.

Absolute immunity does not blanket "the actions of a prosecutor . . . merely because they are performed by a prosecutor." *Id.* at 159 (quoting *Buckley*, 509 U.S. at 273) (internal quotation marks omitted). Instead, *Fogle* instructs that courts must "'focus upon the functional nature of the activities [performed by a prosecutor] rather than [the prosecutor's] status' to determine whether absolute immunity is warranted." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991) (second alteration in original)). The functional test the *Fogel* court alludes to, "separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Id.* at 159-60 (citing *Imbler*, 424 U.S. at 430). The Third Circuit "has found, for instance, that prosecutors are immune from claims arising from their conduct in beginning a prosecution" which might include soliciting false testimony from witnesses in grand jury proceedings, presenting a state's case at trial, or appearing before a judge to present evidence. *Id.* at 160 (collecting cases). On the other hand, the *Fogle* court notes, "a prosecutor's 'investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'" *Id.* (quoting *Buckley*, 509 U.S. at 273). As such, "when prosecutors function as investigators, rather than advocates, they enjoy no right to absolute immunity," even if a prosecutor may have probable cause for an arrest. *Id.* (citations omitted).

11

The inquiry into what function a prosecutor is performing at the time of an alleged constitutional violation is "a fact-specific analysis." *Id.* In fact, the Third Circuit has consistently held that such analysis does not "lend itself to bright-line rules." *See Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008); *see also Fogle*, 957 F.3d at 160. The *Fogle* court emphasizes that such factual inquiry can be onerous, and a prosecutor who seeks to invoke absolute immunity must demonstrate "that absolute immunity should attach to each act [they] allegedly committed that gave rise to a cause of action." *Fogle*, 957 F.3d at 160 (quoting *Light v. Haws*, 472 F.3d 74, 80 (3d Cir. 2007).

With the above rules in mind, the *Fogle* court sets forth a two-step test district courts must use in evaluating whether a prosecutor is entitled to absolute immunity: 1) the district court must ascertain what conduct forms the basis of the plaintiff's cause of action and 2) the district court then must determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served. *Id.*

### 1.     *Count One- Fabrication of Evidence under § 1983*[7]

In accordance with *Fogle*, the Court takes note of Plaintiff's first cause of action: fabrication of evidence. A criminal defendant against whom wrongful criminal charges were brought "may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment." *Dalal*, 2021 WL 1208901, at *8 (quoting *Black v. Montgomery County*, 835 F.3d 358, 370 (3d Cir. 2016)). Under Third Circuit precedent, "[t]o state a successful [§] 1983 claim for knowingly falsified evidence, a plaintiff must show a "reasonable

---

[7] The Court notes that under New Jersey state law, courts apply a different absolute immunity standard. *Dalal v. Molinelli*, No. 20-1434, 2021 WL 1207478, at *6 (D.N.J. Mar. 30, 2021) ("It is long established that under New Jersey law . . . prosecutorial immunity is not absolute like its federal counterpart."). Insofar as this Court addresses only Plaintiff's federal claims in this Opinion and elects not to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, the Court does not reach the application of the state standard for absolute immunity.

likelihood that, absent that fabricated evidence, [he] would not have been criminally charged." *Lentz v. Taylor*, No. 19-1756, 2021 WL 5121247, at *4 (3d Cir. 2021) (quoting *Black*, 835 F.3d at 371); *see also*, *Halsey v. Pfeiffer*, 750 F.3d 273, 294-95 (3d Cir. 2014).

With this rule in mind, the Court recites Plaintiff's allegations offered as the basis for his fabrication of evidence claim. Plaintiff alleges in Spring 2016, State Defendants were investigating Koppel as a "leader of a multi-million-dollar insurance fraud scheme," but "were having trouble finding evidence to corroborate their suspicions." (Second Am. Compl. ¶¶ 61, 62, 67.) Plaintiff further alleges that State Defendants believed Plaintiff had critical information for the Koppel investigation and, seeking to gain his cooperation by any means necessary, provided him four misleading or fabricated pieces of evidence that State Defendants threatened would be used against Plaintiff unless he assisted with State Defendants' investigation of Koppel. (*Id.* ¶¶ 70, 83, 86, 90, 99, 108, 113, 146, 156, 157, 161, 164, 173, 181, 182, 193.) At first glance, these allegations, which were added to Plaintiff's Second Amended Complaint, appear investigatory and non-prosecutorial, suggesting absolute immunity may not attach to protect State Defendants.

As the Third Circuit has noted, "no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." *Halsey*, 750 F.3d at 292-93.  The difficulty with Plaintiff's claim, however, is that in order for him to plead fabrication of evidence under § 1983, he must allege that there is a reasonable likelihood that "but for" the fabrication of evidence, he would not have been criminally charged. *See Lentz*, 2021 WL 5121247, at *4. As such, to sustain a fabrication of evidence claim under § 1983, Plaintiff must go further than alleging the fabrication of evidence in the context of an investigation into Koppel by alleging that the fabricated evidence later led to criminal charges. *See id.* To accomplish this, Plaintiff must rely on allegations that the fabricated evidence was presented to a grand jury, and absent that evidence's presentation to the

13

grand jury, he would not have been charged. (*See, e.g.*, Second Am. Compl. ¶ 253 (including a quote from a state court judge finding that, in Plaintiff's criminal case, "[h]ad the State not misled the grand jur[y] . . . the [c]ourt is not convinced the grand jury would have indicted [Plaintiff]," seemingly alleged by Plaintiff to bolster his fabrication of evidence claim); ¶ 314 (alleging Plaintiff "would not have been *charged* with any criminal offenses had [] State Defendants not fabricated evidence against him in the first instance" (emphasis added)).) In this way, the § 1983 fabrication claim itself forecloses Plaintiff from bringing Count One against State Defendants. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (stating "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role," and consequently, is protected by absolute immunity).

With that said, the Court recognizes that the gravamen of Plaintiff's amended allegations concerns State Defendants' conduct while they were investigating Koppel. (Second Am. Compl. ¶¶ 70, 83, 86, 90, 99, 108, 113, 146, 156, 157, 161, 164, 173, 181, 182, 193.) As such, it appears Plaintiff's Second Amended Complaint intends to allege that, *before* the initiation of any criminal proceedings against Plaintiff or Koppel, State Defendants fabricated evidence against Plaintiff, showed it to his defense counsel, and tried to get Plaintiff to admit to things he did not do while wielding the threat of prosecution over him. (*See id.*) Nonetheless, even taking these acts as true, for the reasons stated above, Plaintiff's allegations of constitutional violations during a criminal investigation cannot sustain a fabrication of evidence claim under § 1983. *See Lentz*, 2021 WL 5121247, at *4 (requiring a plaintiff show a reasonable likelihood that he "would not have been criminally *charged*" but for the fabrication of evidence (emphasis added)). The Court, however, will give Plaintiff an opportunity to find a separate constitutional basis to bring his § 1983 claim against State Defendants for their alleged wrongdoing during Koppel's criminal investigation, that

14

does not necessarily hinge on Plaintiff's eventual prosecution.[8] Accordingly, Count One is dismissed without prejudice.

### 2. Count Two-Malicious Prosecution under § 1983

Absolute immunity more clearly attaches to protect State Defendants from Plaintiff's malicious prosecution claim under § 1983. To state a claim for malicious prosecution under § 1983 a plaintiff must show "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant act maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizures as a consequence of a legal proceeding." *Waselik v. Township of Sparta*, No. 16-4969, 2017 WL 2213148, at *8 (D.N.J. May 18, 2017) (quoting *Halsey*, 750 F.3d at 296-97)).

As with Plaintiff's fabrication of evidence claim under § 1983, Plaintiff's malicious prosecution claim requires the Court to evaluate the initiation of a prosecution by State Defendants. As previously stated, Third Circuit precedent makes clear that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role." *Kulwicki*, 969 F.2d at 1463. Moreover,

---

[8] The Court notes that to articulate a claim for a constitutional violation, Plaintiff will need to allege more than State Defendants fabricated evidence and presented it to him in an attempt to get him to offer information. *See Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 482 (W.D. Pa. 2019), *aff'd*, 844 F. App'x 511 (3d Cir. 2021) ("Unlike in the administrative procedural due process context, in which submitting one's claims to a biased tribunal is itself injurious, the court does not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws."); *see also Buckley*, 509 U.S. at 281 (Scalia, J., concurring) ("I am aware of [] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.") To invoke a violation of procedural due process, Plaintiff "must allege he was deprived of life, liberty, or property in some way as a result of the fabricated evidence" that does not involve his eventual prosecution, or any loss of liberty associated with his prosecution. *See Deforte*, 364 F. Supp. 3d at 482.

the Third Circuit "has explicitly stated that even groundless charges brought by a prosecutor are protected [] in the interest of maintaining vigorous prosecution of crime." *Id.* at 1464.

Here, Plaintiff's allegations that State Defendants fabricated evidence during an investigation of Koppel cannot sustain a malicious prosecution claim. This is because to substantiate Plaintiff's claim, Plaintiff must allege that State Defendants decided to initiate a criminal proceeding, a decision that is clearly protected by absolute immunity. As such, like with Plaintiff's fabrication of evidence claim under § 1983, Third Circuit case law forecloses Plaintiff's malicious prosecution claim from proceeding against State Defendants because the claim necessarily requires the Court to scrutinize actions State Defendants undertook while engaged in prosecutorial functions. *Cf. Jones v. Dalton*, 867 F. Supp. 2d 572, 584 (D.N.J. 2012) (noting that malicious prosecution claims also "require [a] [p]laintiff to prove that [a criminal] proceeding was not initiated with probable cause" and that prima facie evidence of probable cause, established by a grand jury indictment like that which occurred in this case, cannot be rebutted where absolute immunity protects a prosecutor's misrepresentations made to a grand jury).

### 3. Claim Three-Civil Rights Conspiracy under § 1983

Finally, Plaintiff failed to state a civil rights conspiracy claim upon which relief can be granted, and even if he did properly state a claim, absolute immunity protects State Defendants from Plaintiff's conspiracy claim. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that a person acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). "After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, the rule is clear that the plaintiff must provide some factual basis to support the existence of the elements of a

16

conspiracy: agreement and concerted action." *Id.* (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (internal quotation marks omitted)).

Plaintiff alleges that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated by State Defendants. (Second Am. Compl. ¶ 327.) Unfortunately, the Court cannot decipher from Plaintiff's allegations which of these constitutionally protected rights State Defendants allegedly agreed to violate. (*See generally* Second Am. Compl.) The closest Plaintiff comes to alleging "agreement and concerted action" to violate Plaintiff's civil rights involves Hayek Defendants, who Count Three is not brought against. *See, e.g.*, *id.* ¶ 38 ("Hayek joined [] State Defendants' prosecution team[] and became fully invested in their shared goal of manufacturing a case against as many doctors as possible."); ¶ 326.) Moreover, the Second Amended Complaint is replete with language explicitly stating that Hayek and Awari were "coerced" or "suborned" into testifying against Plaintiff, further confusing the Court as to whom conspired to do what. (*Id.* ¶¶ 1, 247, 328 (stating that State Defendants "suborned perjury" from Hayek and Awari while "acting in concert" with them to do so) 330, 346, 358, 364, 368.)

Looking past allegations including Hayek Defendants and Awari Defendants, the Court finds no allegations in the Second Amended Complaint that Keiffer, Berg, Proetta, and Campanella collectively conspired against Plaintiff. (*See generally* Second Am. Compl.) Instead, the Second Amended Complaint asserts that Berg, Proetta, and Campanella separately lied to Plaintiff or fabricated evidence. (*Id.* ¶¶ 49, 108, 129.) As a result, the Court cannot conclude based on the allegations provided that such alleged fabrications were the byproduct of concerted action, let alone decipher which of Plaintiff's constitutional rights was the subject of State Defendants' conspiracy. This lack of clarity alone is sufficient for the Court to dismiss Plaintiff's civil rights

17

conspiracy claim. *See Jutrowski*, 904 F.3d at 293-94 ("[A] plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").

Even if the Court assumes, *arguendo*, that Plaintiff intends to argue his Fourteenth Amendment rights were violated by State Defendants when they fabricated evidence to compel him to cooperate in an investigation of Koppel, his claim must be dismissed because absolute immunity protects State Defendants from such a claim. This is because Plaintiff, to allege his Fourteenth Amendment rights were violated, must contend that fabricated evidence was used in his criminal prosecution. (*See* Pl.'s Opp'n 41, ECF No. 94 (arguing that under *Halsey*[9] any reasonable investigator knows that "if they knowingly use[] fabricated evidence to bring about [a] prosecution or to help secure [a] conviction" they have violated a criminal defendant's constitutional rights) (citing *Halsey*, 750 F.3d at 295-96).) As such, Plaintiff's claim for civil rights conspiracy requires the Court to analyze a prosecutorial function: use of fabricated evidence in initiating a criminal proceeding. *Cf. Fogle*, 957 F.3d at 159 (stating that even "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings" is protected by absolute immunity). For these reasons, even assuming that Plaintiff sufficiently stated an agreement by State Defendants under Rule 8 pleading standards, Count Three also must be dismissed with prejudice because absolute immunity attaches to State Defendants.

B.     **Supplemental Jurisdiction**

As all of Plaintiff's federal claims have been dismissed and there is no diversity of citizenship between Plaintiff and remaining Defendants in this case, the Court declines to exercise

---

[9] Significantly, absolute prosecutorial immunity is not at issue in *Halsey*. 750 F.3d at 299. So, when the *Halsey* court found that a civil plaintiff can sustain a Fourteenth Amendment claim against a civil defendant alleged to have fabricated evidence for use in a criminal prosecution, it did not do so where absolute immunity was applicable. Instead, the defendants in *Halsey* were both detectives, neither of whom allegedly conspired *with* a prosecutor to bring criminal charges against a criminal defendant, like is the case here. *Id.* at 278-79.

supplemental jurisdiction over Plaintiff's remaining state law claims. (Second Am. Compl. ¶¶ 7- 16; 28 U.S.C. § 1367(c)(3) (stating a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). The Court finds this measure especially appropriate where, as here, there are five remaining state law Counts against all Defendants, several of which are significant state-constitutional law claims. Accordingly, all remaining Counts against State Defendants, and all counts against Hayek Defendants and Awari Defendants, are dismissed without prejudice.

### IV.   CONCLUSION

For the reasons stated above, State Defendants' Motion to Dismiss Counts One, Two and Three of Plaintiff's Second Amended Complaint is **GRANTED**. Count One of Plaintiff's Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** and Counts Two and Three of are **DISMISSED WITH PREJUDICE**. The remaining state law claims are **DISMISSED WITHOUT PREJUDICE.**

Date: March 24, 2023

                                                   ZAHID N. QURAISHI
                                                   UNITED STATES DISTRICT JUDGE